**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GUILLERMO TORRES MIRANDA,

Petitioner,

v.

Case No. 1:26-cv-03145-MIS-KRS

JEFFRY FIKES, Warden of the Cibola County Correctional Center; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARY DE ANDA-YBARRA, Field Office Director of the ICE El Paso Field Office of Enforcement and Removal Operations; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,

Respondents.

**ORDER GRANTING VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

THIS MATTER is before the Court on Petitioner Guillermo Torres Miranda's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1, filed September 22, 2026. The federal Respondents filed a Response on October 8, 2026 ("Response"),[1] ECF No. 7, to which Petitioner filed a Reply on October 18, 2026 ("Reply"), ECF No. 8. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Petition.

[1] The Clerk's Office served all Respondents with the Petition pursuant to this District's Standing Order Regarding Service of Process in Immigration Habeas Petitions filed Pursuant to 28 U.S.C. § 2241, Case 1:26-mc-00004, ECF No. 3 (D.N.M. Jan. 28, 2026). ECF No. 3. However, as has become customary in these cases, the Warden did not respond to the Petition.

## I. Background

Petitioner is a citizen of Cuba who came to the United States on April 30, 1980, during the Mariel boatlift. Pet. ¶ 2. He has lived in the United States ever since. See id. ¶ 16. He is 73 years old and suffers from serious physical and mental health issues. Id. ¶¶ 2, 20. Over the last forty years, while struggling with mental illness and homelessness, Petitioner has been convicted of many crimes. Pet. ¶ 16; Decl. of Mark Sanchez ("Sanchez Decl.") ¶¶ 9-51, ECF No. 7-1. Since 2010, Petitioner has seven convictions for possession of cocaine and possession of drug paraphernalia, as well as convictions for resisting an officer, disorderly conduct, and larceny. Id. ¶¶ 35, 37, 39, 41, 43, 45, 47, 49, 51.

On January 8, 2013, an Immigration Judge ordered Petitioner removed from the United States to Cuba. Sanchez Decl. ¶ 52, ECF No. 7-1. The same day, Petitioner was released from the custody of U.S. Immigration and Customs Enforcement ("ICE") under an Order of Supervision. Id. ¶ 53.

On November 18, 2025, ICE re-detained Petitioner to execute his removal order.[2] Id. ¶ 54. He has been detained ever since, and is currently detained at the Cibola County Correctional Center in Milan, New Mexico. Pet. ¶ 1. ICE is "exploring removal to all countries permissible under the INA and its implementing regulations as well as Third Country Removal . . . ." Sanchez Decl. ¶ 55. Cuba has twice denied repatriation. Id. ¶¶ 59, 61

[2] According to the Petition, Petitioner has been in ICE custody since April 2025. Pet. ¶ 16. For purposes of this Order, the Court will assume that Petitioner has been in immigration detention since November 18, 2025, as stated in the Declaration of Deportation Officer Mark Sanchez, which is attached to the Response. ECF No. 7-1 ¶ 54. Whether Petitioner has been in immigration detention since April 2025 or November 2025 is immaterial to the Court's analysis.

On September 22, 2026, Petitioner filed the instant Petition arguing that his continued detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process clause. Pet. ¶¶ 38-51.

On September 24, 2026, the Court issued an Order to Show Cause and Enjoining Transfer instructing Respondents to "specify whether the Court has already ruled on the legal issue(s) in this case and whether the holdings in Zadvydas v. Davis, 533 U.S. 678 (2001) or Mardanpour v. Warden, Case No. 2:26-cv-00550-MIS-LF, 2026 WL 963164, at *3-8 (D.N.M. Apr. 9, 2026) require relief." ECF No. 4. Respondents filed a Response, ECF No. 7, to which Petitioner filed a Reply, ECF No. 8.

## II. Legal Standard

Federal courts possess authority to review the legality of executive detention through the writ of habeas corpus. Title 28, United States Code, section 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." Soberanes v. Comfort, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." Palma-Salazar v. Davis, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation marks omitted) (quoting McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)).

## III. Discussion

In Count One, Petitioner argues that his prolonged detention—now exceeding eleven months[3]—violates his rights under the INA, 8 U.S.C. § 1231(a). Pet. ¶¶ 23-51. He argues that pursuant to Zadvydas, his detention is no longer presumptively reasonable and he is not significantly likely to be removed in the reasonably foreseeable future. Pet. ¶ 43. In Count Two, Petitioner argues that his continued detention violates his procedural and substantive due process rights under the Fifth Amendment because it is not reasonably related to its purpose of effectuating removal. Id. ¶ 47. As such, he argues that he is entitled to release. Id.

Respondents argue that Petitioner's Zadvydas claim fails because he has acted to prevent his removal, and therefore the removal period is extended under 8 U.S.C. § 1231(a)(1)(C). Resp. at 1-2. Specifically, they argue that Petitioner twice "failed to comply" with third-country removal to Mexico. Id. at 1. "First on November 19, 2025, he refused to sign form I-229(a) Warning for failure to deport." Id. at 1-2. Then, on April 11, 2026, "Petitioner refused to sign the Notice of Third Country Removal." Id. at 2. They argue that "the risk of indefinite detention that motivated the Supreme Cout's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own detention." Id. (quoting Singh v. U.S. Att'y Gen., 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting Pelich v. Immigr. and Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)). They further argue that "[e]ven if this Court does not find that DHS/ICE's efforts have been sufficient, it should not order the relief requested by Petitioner (immediate release)." Id. Finally, they argue that "[i]f this Court finds repatriation to a suitable country is not reasonably foreseeable, DHS/ICE should have an opportunity to demonstrate acceptance of that finding by deciding whether

[3] According to the Petition, he has been in immigration detention for more than seventeen months. See supra Note 2.

Petitioner's continued detention based on special circumstances or because the Petitioner is a danger to the community." Id. at 2-3 (citing 8 C.F.R. §§ 241.13(b)-(d), 241.14(f)).

In his Reply, Petitioner argues that Respondents failed to demonstrate that "they have made any affirmative steps to effectuate Petitioner's deportation to Mexico, including the mandatory step of investigating if Mexico would even be willing to receive Petitioner." Id. at 2. He argues that the Declaration of Deportation Officer Mark Sanchez, which is attached to the Response, contains only generalized statements that Respondents intend to remove Petitioner from the U.S., which this Court has found insufficient to sustain their burden. Id. at 3 (citing Ndou v. Noem, 833 F. Supp. 3d 1192, 1199 (D.N.M. 2026)). He further argues that there is no evidence showing he failed to comply with efforts to remove him to a third country. Id. at 4. Specifically, he argues that although Respondents claim he failed to sign a Notice of Removal, they "offer no evidence that was ever served with an application for third-country travel documents, asked to fill out any such documents, or actually refused to comply with such a request." Id. Finally, Petitioner maintains that his detention violates his procedural and substantive due process rights under the Fifth Amendment. Id. at 5-6.

To begin with, it is undisputed that because Petitioner is subject to a final order of removal, 8 U.S.C. § 1231(a) governs his detention. Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). Under 8 U.S.C. § 1231(a)(6), the Attorney General may detain certain noncitizens beyond the ninety-day "removal period" following entry of a final order of removal. However, the statute implicitly "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. In Zadvydas, the Supreme Court established a

presumptively reasonable six-month period of detention. Id. at 701. After that period, if the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.; see also Clark v. Martinez, 543 U.S. 371, 377-78 (2005). However, the removal period may be extended and the noncitizen may remain in detention "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

The Court initially finds that Petitioner is not subject to an extended removal period (and concomitant detention) under 8 U.S.C. § 1231(a)(1)(C). Although Petitioner allegedly "refused to sign form I-229(a) 'Warning for failure to depart', 'Instruction sheet to detainee regarding requirement to assist in removal', & 'Notice of third country removal'" on November 19, 2026, and "refused to sign Notice of third country removal" on April 11, 2026, Respondents provide no evidence that Mexico (or any other third country) was willing to accept Petitioner. In fact, Mr. Sanchez's Declaration appears to indicate that Respondents have either not asked a third country to accept Petitioner, or that a third country declined to accept him, as the Declaration states: "In furtherance of its efforts to effectuate the Petitioner's removal, HQ-RIO will continue efforts to find a Third Country to accept the Petitioner." Sanchez Decl. ¶ 62. Without evidence that a third country is willing to accept Petitioner, the Court cannot find that Petitioner's refusal to sign the referenced warning, instruction sheet, and notice subjects him to an extended period of removal and detention.

Next, the Court finds that the presumptively reasonable six-month-period of confinement has expired, Petitioner has provided good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future, and the Government has failed to present evidence sufficient to rebut that showing. To begin with, Petitioner has been detained for over eleven months. Pet. at 10-11. Thus, the presumptively reasonable period of detention has expired. See Zadvydas, 533 U.S. at 701.

Next, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. He asserts that "ICE has made no efforts to deport him to Cuba and, given the Government's recent extreme stance on relations with Cuba, it is unlikely that relations to facilitate deportations will resume in any timely manner." Pet. ¶ 16. Additionally, he has been detained for more than eleven months, and Respondents concede that they have twice failed to convince Cuba to repatriate him. Sanchez Decl. ¶¶ 59-61. "Courts in this district have repeatedly held that prolonged detention, combined with failed or nonexistent removal efforts, satisfies the petitioner's initial burden." Naghiyev v. Bondi, No. 2:25-cv-1313 MIS/DLM, 2026 WL 700064, at *5 (D.N.M. Mar. 12, 2026) (citing Lorenzo v. Bondi, No. 2:25-cv-0923 KWR/GJF, 2026 WL 84521, at *5–6 (D.N.M. Jan. 12, 2026); Jimenez Chacon v. Lyons, 811 F. Supp. 3d 1299, 1310 (D.N.M. 2025); Salazar-Martinez v. Lyons, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025)). Accordingly, the Court is satisfied that Petitioner's unreasonably prolonged detention and the Government's unsuccessful attempts to repatriate him with Cuba satisfies Petitioner's burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[,]" Zadvydas, 533 U.S. at 701. See, e.g., Jimenez Chacon, 811 F. Supp. 3d at 1310; Trejo v. Warden of ERO El Paso E. Mont., 807 F. Supp. 3d 697, 704 (W.D. Tex. 2025); Zhuzhiashvili v. Carter, 802 F. Supp. 3d 1337, 1340 (D. Kan. 2025).

Finally, Respondents failed to meet their burden of demonstrating a "significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. To satisfy this burden, Respondents must present evidence in support of their position. See id. ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." (emphasis added)). Here, the only evidence bearing on the likelihood of Petitioner's removal is Mr. Sanchez's Declaration that states the Government twice failed to repatriate him with Cuba, Sanchez Decl. ¶¶ 59, 61, and that "[i]n furtherance of its efforts to effectuate the Petitioner's removal, HQ-RIO will continue efforts to find a Third Country to accept the Petitioner." Sanchez Decl. ¶ 62. These statements fail to satisfy Respondents' burden of demonstrating a "significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

Because Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and because Respondents have not rebutted that showing, his continued, indefinite detention violates the INA, and he is entitled to immediate release subject to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3).[4] See Khan v. Current Sec'y of Dep't of Homeland Sec., Case No. 2:26-cv-00315-MIS-GJF, 2026 WL 776190, at *3 (D.N.M. Mar. 19, 2026); Jiminez Chacon, 811 F. Supp. 3d at 1310, 1313; Salazar-Martinez, 2025 WL 3204807, at *2-3; Hmung v. Bondi, Case No. CIV-25-1303-J, 2025 WL 3657221, at *4 (W.D. Okla. Dec. 9, 2025), report and recommendation adopted, 2025 WL 3670499 (W.D. Okla. Dec. 17, 2025); Momennia v. Bondi, Case No. CIV-25-1067-J, 2025 WL 3011896, at *8-10 (W.D.

[4] Because the Court finds that Petitioner's detention violates the INA, it need not decide whether his detention violates the Fifth Amendment.

Okla. Oct. 15, 2025), report and recommendation adopted, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025).

The Court rejects Respondents' argument that DHS/ICE should have an opportunity to determine whether Petitioner should remain detained based on "special circumstances" under 8 C.F.R. §§ 241.13(b)-(d), 241.14(f). Resp. at 2-3. The administrative proceedings outlined in those regulations permit the Department of Homeland Security's Headquarters Post-order Detention Unit ("HQPDU"), "in response to a request from a detained alien, . . . to determine whether there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(c). "If so, the HQPDU shall determine whether the alien should be released from custody under appropriate conditions of supervision or should be referred for a determination under § 241.14 as to whether the alien's continued detention may be justified by special circumstances." Id. Section 241.14, in turn, authorizes "an alien's long-term non-punitive detention . . . where limited special circumstances are present and particular procedural requirements are satisfied." Hernandez-Carrera v. Carlson, 547 F.3d 1239, 1253 (10th Cir. 2008).

However, these administrative procedures are irrelevant to this proceeding because they must be initiated by a request from the detained alien, see 8 C.F.R. § 241.13(c), and there is no evidence or argument that Petitioner requested DHS to administratively review his detention. Nor have Respondents cited any authority holding that DHS may sua sponte initiate the administrative review of an alien's detention under 8 C.F.R. §§ 241.13 and .14, that a court may order DHS to do so, or that a court may order a detained alien to do so. Consequently, the Court rejects Respondents' request for an order directing that "DHS/ICE should promptly inform the Court whether it intends to continue to detain Petitioner based on special circumstances such as dangerousness per 8 C.F.R § 241.14(f)." Resp. at 3.

The Court understands that some may find it unpalatable to release a noncitizen with a lengthy criminal record who is suffering from mental illness. However, "[t]he choice . . . is not between imprisonment and the [noncitizen] 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." Zadvydas, 533 U.S. at 696 (internal citation omitted). Regardless, the Court finds it "not only unpalatable but also untenable to conclude that under the Due Process Clause of the Fifth Amendment persons living in the United States—whether by our choice or not—could be subjected to a [potential] life sentence in prison simply because their country of origin will not have them back." Rosales-Garcia v. Holland, 322 F3d 386, 413 (6th Cir. 2003). Perhaps Petitioner's release back into the United States could have been avoided if Respondents had attempted third country removal.

## IV. Conclusion

Therefore, it is **HEREBY ORDERED** that:

1. The Verified Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;
2. Respondents are **ORDERED** to immediately release Petitioner Guillermo Torres Miranda from custody/detention, subject to reasonable conditions of supervision under 8 U.S.C. § 1231(a)(3);
3. Respondents shall return all of Petitioner's seized property to Petitioner;
4. Respondents **SHALL NOT** re-detain Petitioner absent (1) evidence that Petitioner has committed a crime or otherwise violated his conditions of supervision, or (2) concrete travel plans to remove Petitioner from the United States; and

5. The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE